UNITED STATES of America

v.

Biagio PINTO, a/k/a Bob Pinto.

Cr. A. No. 79–133.

United States District Court,
E. D. Pennsylvania.

Nov. 16, 1979.

Peter F. Vaira, U. S. Atty., Stanley M. Weinberg, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

Jeffrey M. Miller, Philadelphia, Pa., for defendant.

## MEMORANDUM

HUYETT, District Judge.

Following a hearing on November 5, 1979, we declined to hold either Biagio Pinto or Pinto Trucking Service, Inc. in civil contempt. This memorandum, which constitutes our findings of fact and conclusions of law, explains the background of the government's request that we hold both Biagio Pinto and the Pinto Trucking Service, Inc. in contempt and our reasons for not doing so.

Following a hearing on various pretrial motions, we issued an Order on August 20, 1979, requiring Pinto Trucking Service, Inc. to comply with two subpoenas served upon its corporate representatives. The production of documents was ordered pursuant to Federal Rule of Criminal Procedure 17(c). Pursuant to the provisions of the Order of August 20, 1979, a further hearing was conducted on October 12, 1979, after the government reported that the subpoenas and Order had not been complied with in full. At that hearing the parties stipulated that certain documents included in the subpoenas and the August 20th Order had not been delivered to the government following the issuance of the Order. It was also stipulated that Biagio Pinto is the Chief Executive Officer and Chairman of the Board of Pinto Trucking Service, Inc.

At the hearing of October 12, 1979, Biagio Pinto testified that none of the disputed documents is within his custody or control, that he does not know if they exist, and that he had made a "good faith effort" to have them located. At the time of the October 12th hearing, however, we were less than convinced that either Biagio Pinto or Pinto Trucking Service, Inc. had taken all reasonable steps to comply with the August 20th Order.

James Pinto, also known as James Suleski,[1] a vice president of Pinto Trucking Service, Inc., also testified at the hearing of October 12, 1979. He testified, and we so find, that he did not ask defendant if he knew where the documents were located, that defendant did not tell him where to look, and that he took no steps to determine who had earlier photocopied some of the disputed documents. This testimony establishes that James Suleski did not take all reasonable steps, on behalf of Pinto Trucking Service, Inc., to comply with the Order of August 20, 1979. Mr. Suleski also testified as to the efforts he made, at Biagio Pinto's request, to locate the documents. We find Mr. Suleski's testimony concerning his search not to be credible. We do not credit Mr. Suleski's testimony in this regard because Mr. Suleski was an extremely evasive and uncooperative witness. Furthermore, his relationship with Biagio Pinto creates a bias and a reason for him not to desire that certain documents that may be damaging to Mr. Pinto be discovered. His failure to take other simple steps, such as contacting other present and former Pinto Trucking Service employees who may have knowledge of the whereabouts of these documents, substantiates our belief that Mr. Suleski's efforts to locate the documents were, at best, half-hearted.

At the same hearing Richard McKeen, an employee of the Federal Bureau of Investigation, testified, and we so find, that invoice # 16955, one of the disputed documents, was on the premises of Pinto Trucking Service, Inc. on April 5, 1979. In addition, Georgia Long, an employee of Pinto Trucking Service, Inc., testified that during the period in which the missing documents were generated, the record-keeping system at Pinto Trucking Service, Inc. was disorderly and that there was inadequate storage space for documents. As a result, she testified, many records were kept in boxes at various locations on the premises.

 Following the hearing of October 12, 1979, it was clear, based upon the stipulation of counsel and the testimony produced, that the Order of August 20, 1979, had

---

1. Although he referred to himself as James Pinto, for the remainder of this memorandum we shall refer to him as James Suleski to prevent confusion with Biagio Pinto.

not been complied with in full. Furthermore, even if Biagio Pinto's testimony that the documents were not in his custody or control was fully credited, Pinto Trucking Service, Inc. had not, in our opinion, taken all the steps reasonably necessary to attempt to comply with the Order of August 20, 1979. As the Supreme Court has stated:

> Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply. A court will not imprison a witness for failure to produce documents which he does not have, unless he is responsible for their unavailability, [citation omitted], or is impeding justice by not explaining what happened to them, [citation omitted].

> On the other hand, persons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. . . .

*United States v. Bryan*, 339 U.S. 323, 330–31, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950).

Concerned that Biagio Pinto and Pinto Trucking Service, Inc. were attempting to engage in precisely the "game of hare and hounds" warned against in *Bryan*, we issued an Order on October 26, 1979, requiring Biagio Pinto and Pinto Trucking Service, Inc. to show cause why they should not be held in civil contempt for failure to comply with the Order dated August 20, 1979.[2]

■ A contempt proceeding was thereafter conducted on November 5, 1979. By agreement of counsel, the record of the October 12th hearing was incorporated into the record. At the latest hearing, Arnold S. Davidson, comptroller for Pinto Trucking Service, Inc., testified about his efforts to locate the documents.[3] Most significantly, he testified, and we so find, that he met with several persons who are current employees of Pinto Trucking Service, Inc. who are involved with recordkeeping. His discussion with those employees produced no leads that helped him locate the documents. Those employees were able, however, to inform Mr. Davidson of the identity of several former employees who might know where the documents were located. Mr. Davidson, pursuant to those conversations, contacted Cass Dodds and Jane Erwin.

---

2. We had earlier rejected Biagio Pinto's contention that a contempt proceeding against him was barred by double jeopardy, collateral estoppel, or law of the case. Similar contentions were also raised by Pinto Trucking Service, Inc. The basis of these contentions lay in a contempt proceeding conducted by Judge Luongo of this Court when many of these same documents were not produced pursuant to a grand jury subpoena. Judge Luongo also declined to hold Mr. Pinto in contempt. We rejected Mr. Pinto's double jeopardy argument primarily because of the civil nature of contempt and because, in the case before us, Mr. Pinto's obligation arose from an Order that, although it included documents that were not produced in response to the previous subpoena, was distinct from the previous subpoena. The Order of August 20, 1979, issued pursuant to Federal Rule of Criminal Procedure 17(c), imposed on Pinto Trucking Service, Inc. and Mr. Pinto, as corporate representative, the duty to comply or to attempt in good faith to comply. Until we were convinced that such an effort had been made, the prior contempt proceeding did not serve as a permanent shield against the imposition of civil contempt.

We find Mr. Pinto's argument concerning collateral estoppel more persuasive in regard to whether the government had established that the documents now exist, which Judge Luongo held they had not done. This argument ignores, however, the obligation to attempt to comply with the Order. Only after Mr. Pinto and Pinto Trucking Service, Inc. adduced sufficient evidence of that attempt was the government required to establish a present ability to comply. Prior to that time, the simple failure to attempt to comply, by itself, could have justified a finding of contempt.

3. Our Order of August 20, 1979 specified that Mr. Davidson was not an appropriate or competent person to conduct the search for the documents mandated by that Order. This finding was based in part on the fact that Mr. Davidson had not been in the employ of Pinto Trucking Service, Inc. at the time the relevant documents were generated. In our opinion, however, this does not preclude his testifying at the contempt hearing. Furthermore, his personal lack of familiarity with earlier records does not prevent his contacting present and former employees, as he has now done, in an attempt to locate the documents.

Nonetheless, and after other efforts,[4] he was unable to locate the documents.

It has been noted that

A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the order directed to the corporation, prevent compliance or *fail to take appropriate action within their power for the performance of the corporate duty*, they, no less than the corporation, are guilty of disobedience and may be punished for contempt. *Wilson v. United States*, 221 U.S. 361, 376, 31 S.Ct. 538, 55 L.Ed. 771 (1911).

*United States v. Greyhound Corp.*, 363 F.Supp. 525, 571 (N.D.Ill.1973), *aff'd*, 508 F.2d 529 (7th Cir. 1974) (emphasis supplied). *See also United States v. Fleischman*, 339 U.S. 349, 357–58, 70 S.Ct. 739, 94 L.Ed. 906 (1950). Prior to the efforts testified to by Mr. Davidson, we believe that Pinto Trucking Service, Inc., particularly in view of its haphazard record-keeping system, had failed to take appropriate action within its power to attempt to comply with the Order of August 20, 1979. Although, in all frankness, we do not believe that Pinto Trucking Service, Inc.'s efforts to comply with the Order against it have been exemplar, we do believe that they have now, albeit belatedly, taken sufficient steps to avoid invocation of the coercive power of contempt.

The only basis for the imposition of civil contempt at this time would be if the government could establish that, contrary to the testimony of Biagio Pinto and various Pinto Trucking Service, Inc. employees, the documents are indeed currently within the control of Biagio Pinto or Pinto Trucking Service, Inc. and available for production. One of the documents was at Pinto Trucking Service, Inc. seven months ago. Although neither Pinto Trucking Service, Inc. nor Biagio Pinto deny that the other documents existed at one time, the documents date from as early as 1972; the most recent date from 1974. Despite the fact that one of the documents existed at least as recently as April, 1979, we hold that, on the whole, the government has not made a sufficient showing that the documents are now in existence and capable of being produced. *Cf. United States v. Hansen Niederhauser Co.*, 522 F.2d 1037 (10th Cir. 1975). Therefore the government's request that we hold Biagio Pinto and Pinto Trucking Service, Inc. in civil contempt is denied.

---

4. Mr. Davidson also testified that he contacted Pinto Trucking Service, Inc.'s auditors and commissioned Georgia Long to conduct a search for the documents. Both efforts proved fruitless.